■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN M. WAITE, Appellant. [663 NYS2d 901] —Spain, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered November 20, 1995, upon a verdict convicting defendant of the crimes of sodomy in the first degree (five counts) and aggravated sexual abuse in the first degree.

In December 1994 defendant was indicted on five counts of sodomy in the first degree and two counts of aggravated sexual abuse in the first degree. The indictment alleged, *inter alia*, that defendant had engaged in five separate acts of deviate sexual intercourse with another person by means of forcible compulsion. Following a jury trial, defendant was convicted of all five counts of sodomy in the first degree and one count of aggravated sexual abuse in the first degree; he was sentenced as a persistent felony offender to concurrent terms of imprisonment of 25 years to life on each count. Defendant appeals.

We affirm. Initially, we reject defendant's contention, contained in his *pro se* brief, that his arrest and the ensuing search of his van were illegal. The evidence adduced at the suppression hearing revealed that the victim contacted the State Police, identified himself by name and provided his address and phone number; he was crying when he reported that he had been sodomized and stabbed by a man who was sleeping in a white van parked outside his residence. Thereafter, two State Troopers were dispatched and instructed to investigate the matter. Upon arrival, the officers approached the vehicle and determined that its front seats were unoccupied. After knocking on the windows and doors and receiving no response, the officers opened the unlocked rear door and discovered defendant inside. As defendant acceded to the officers' request to exit the vehicle and identify himself, the officers observed blood on his shirt. One of the officers testified that, in response to his inquiry as to the origin of the blood, defendant denied that the red substance was blood and insisted that he had stained the shirt while eating salsa with a knife. Defendant was handcuffed and placed in a patrol car. Shortly after obtaining a statement from the visibly shaken victim, which essentially repeated the sodomy allegations, the officers returned to the patrol car where defendant was read his *Miranda* rights.

Probable cause for a warrantless arrest exists where there is

information sufficient to support a reasonable belief that an offense has been or is being committed by the suspect (*see, People v Maldonado*, 86 NY2d 631, 635; *People v Hicks*, 68 NY2d 234). While generally such probable cause may not be premised upon hearsay information lacking indicia of reliability (*see, Spinelli v United States*, 393 US 410; *People v Griminger*, 71 NY2d 635), information provided by an identified citizen and derived from personal knowledge enjoys a presumption of reliability and may form the basis for probable cause (*see, People v Chipp*, 75 NY2d 327, *cert denied* 498 US 833; *People v Jackson*, 235 AD2d 923, 924-925). In the instant case the detailed information provided by the disclosed victim and the fact that the victim's statement designating the perpetrator's location was quickly ascertained to be correct, coupled with defendant's appearance and statements upon exiting the vehicle, were sufficient to provide police with probable cause to believe that defendant had perpetrated an act of violence upon the victim (*see, e.g., People v Lacen*, 154 AD2d 398, *lv denied* 74 NY2d 949). Having determined the legality of defendant's arrest, we reject defendant's contention that the evidence obtained thereafter is "fruit of the poisonous tree" (*see, People v Pegues*, 208 AD2d 773, *lv denied* 84 NY2d 1014; *People v Johnson*, 102 AD2d 616).

In support of their search of the van, the officers testified at the suppression hearing that subsequent to the arrest and after agreeing to speak with them defendant denied any sexual involvement with the victim or having inflicted his injuries, and gave the officers permission to search the van for the knife which he claimed he used to eat the salsa. The officers then entered the van and located two knives, one which appeared to be blood stained and another which was covered with a salsa-like substance. Notably, defendant does not claim that his consent to this search was involuntary; in our view, that consent alone justified the initial warrantless search of the van (*see, People v Reyes*, 174 AD2d 367, *lv denied* 78 NY2d 1014; *People v Gilbert*, 122 AD2d 454, *lv denied* 68 NY2d 812). Defendant's van was impounded for an inventory search within minutes of his arrest and defendant makes no contention that the inventory search was not conducted in accordance with proper inventory procedure (*see, People v Burghart*, 177 AD2d 866).

Next, "viewing the evidence in a neutral light while giving due deference to the jury's assessment of credibility" (*People v Hubert [King]*, 238 AD2d 745, 746, *lvs denied* 90 NY2d 859, 860; *see, People v Rose [Cousins]*, 215 AD2d 875, 877, *lvs denied*

86 NY2d 793, 801), we reject defendant's contention that his conviction was against the weight of the evidence. "Minor inconsistencies in the [victim's] testimony and defendant's denial that he committed the crimes merely create[s] a credibility issue for the jury's resolution" (*People v Corbett*, 208 AD2d 1059 [citations omitted]; *see, People v Dunavin*, 173 AD2d 1032, *lv denied* 78 NY2d 965; *People v Szczepanski*, 172 AD2d 884, *lv denied* 78 NY2d 957); further, the jury's determination is afforded great weight on appeal (*see, People v Day*, 215 AD2d 894, *lv denied* 86 NY2d 793; *People v Farrell*, 210 AD2d 428, *lv denied* 85 NY2d 861; *People v Stumbrice*, 194 AD2d 931, *lv denied* 82 NY2d 727).

Here, the victim, a male in his mid-30s, testified that after what he described as a chance meeting with defendant at a rest area parking lot, he willingly entered defendant's van where he engaged in consensual fondling with defendant. However, when he attempted to exit the van, defendant threw him to the floor of the van, put a knife to his throat, overpowered him, handcuffed his hands behind his back, shoved a sock in his mouth, wrapped duct tape around his hands, mouth and head, removed his pants and anally sodomized him. The victim further testified that over the course of the evening defendant continually orally and anally sodomized him by use of force and against his will and that defendant cut him with a knife, struck him on the head with a beer bottle, and used a beer bottle and metal rod to anally abuse him.

The victim's testimony was corroborated by the treating emergency room physician who testified that the victim had several fresh cuts and bruises on his chest, ear, wrists and shoulders, as well as a number of older bruises in these areas. The record also reveals corroborating testimony regarding the victim's allegations of being sexually abused with a beer bottle, of being beaten about the head and suffering a puncture wound from a knife to the stomach. Also introduced into evidence were approximately 20 or 30 items related to the crime found within defendant's van, including the handcuffs, knives, beer bottles, duct tape and bloodstained clothing, bedding and blankets, several of which were identified by the victim at trial.

Defendant's version of events was introduced into evidence through his Grand Jury testimony. Defendant claimed that the victim lied and that the sexual contact with the victim, involving fondling and fellatio, was consensual. Defendant denied any further sexual contact with the victim although he admitted that they had a physical altercation resulting from his allegation that the victim had taken money from the van.

Clearly these two versions presented credibility issues for the jury to resolve. Upon our review we find no reason to disturb the jury's obvious resolution of such issues in the victim's favor (*see, People v Vega*, 199 AD2d 822, *lv denied* 83 NY2d 859; *People v Murphy*, 188 AD2d 742, *lv denied* 81 NY2d 890) or find the jury's determination against the weight of the evidence (*see, People v Hubert, supra*). In our view, the jury did not fail to "give the evidence the weight it should be accorded" (*People v Bleakley*, 69 NY2d 490, 495).

Next, we reject defendant's contention that the blood stained shirt retrieved from the private property where part of the sodomy occurred and blood samples drawn from defendant were improperly received into evidence, arguing that the prosecution failed to establish a sufficient chain of custody for such evidence and that tampering could have occurred. Minor deficiencies in the chain of custody are relevant to the weight, rather than the admissibility, of the evidence (*see, People v Leach*, 203 AD2d 483, *lv denied* 83 NY2d 968). Here, the People established a chain of custody for the blood samples and the victim's shirt; any deficiencies were minor and County Court properly determined that defendant's objections went to the weight, rather than the admissibility, of the evidence.

Next, although unpreserved for appellate review, we reject defendant's contention that the procedure to adjudicate him a persistent felony offender violated his right to procedural due process because it permitted County Court to act as the accuser by issuing the "accusatory instrument", in this case the persistent felony offender statement (*see*, CPL 400.20). Procedural due process simply requires that a defendant be afforded adequate notice of the proceedings against him and a meaningful opportunity to respond (*see, People v Ramos*, 85 NY2d 678). Here, County Court complied with the mandate of CPL 400.20 (4) requiring the issuance of a written notice of the intention to determine whether defendant should be sentenced as a persistent felony offender, and properly followed the hearing provisions of the statute. Notably, defendant was present at the hearing, testified at length and presented evidence on his behalf. In our view, this procedure was more than adequate to satisfy due process requirements.

We have reviewed defendant's remaining contentions, including alleged prosecutorial misconduct and that the language in County Court's circumstantial evidence charge was erroneous, and find them to be without merit.

Cardona, P. J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed.