*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 3, 2016                    106536
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

WILLIAM BOEHLKE,
                        Appellant.
_____

Calendar Date:  January 6, 2016

Before:  McCarthy, J.P., Garry, Rose and Devine, JJ.

_____

        Hug Law, PLLC, Troy (Matthew C. Hug of counsel), for
appellant.

        P. David Soares, District Attorney, Albany (Vincent Stark
of counsel), for respondent.

_____

Devine, J.

        Appeal from a judgment of the County Court of Albany County
(Lynch, J.), rendered October 11, 2013, upon a verdict convicting
defendant of the crimes of grand larceny in the second degree and
identity theft in the first degree.

        Defendant was charged in an indictment with grand larceny
in the second degree and identity theft in the first degree as a
result of accusations that, from July 2011 to January 2013, he
used the victim's ATM card to make substantial unauthorized
withdrawals from her checking account.  He was convicted as
charged following a jury trial.  County Court imposed sentences
of time served and a probation term of five years on each count,
to be served concurrently, and directed him to pay restitution.

Defendant now appeals.

Defendant argues that various elements of the charged crimes were not established by legally sufficient evidence, but those contentions are unpreserved given his failure to specifically advance them in his trial motion to dismiss (see People v Carncross, 14 NY3d 319, 324-325 [2010]; People v Gray, 86 NY2d 10, 19 [1995]).  Nevertheless, "as per defendant's request, we remain obligated to conduct a weight of the evidence review for both of the charged crimes, which necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt at trial" (People v Briggs, 129 AD3d 1201, 1202 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1038 [2015]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).

Defendant was the victim's paramour and lived at her goat farm beginning in 2010, and the victim paid for all of their expenses with money provided by her mother.  Defendant was unemployed, but was allowed to live at her farm for free in return for him doing work around it.  The victim was the only one authorized to use her checking account and ATM card, and she was not in the habit of permitting defendant to use her card, although she had done so "once or twice" over the period that he lived at the farm.  The victim did not review her account statements during that period with any rigor, but noticed in the fall of 2012 that withdrawals of $300 were being made from her account "pretty much on a daily basis."  She initially believed that the items were denoting credit card payments but, after speaking to her more financially savvy mother in January 2013, reported the unauthorized ATM withdrawals to her bank and to the State Police.  The subsequent investigation revealed that over 300 unauthorized withdrawals, amounting to approximately $90,000, had been made from July 2011 onward.  After the victim reviewed video evidence from the ATM showing that defendant had made the most recent withdrawal, the two engaged in a recorded telephone conversation in which defendant can be heard apologizing for his actions and repeatedly offering to repay her.

Defendant presented a different account of events, asserting that the victim gave him the ATM card and her personal

identification number, permitted him to make the withdrawals and usually took all of the money upon his return to the farm. He further downplayed his admissions in the recorded telephone call, claiming that he was rattled by the victim's accusations and was just "trying to appease" her. The jury, however, obviously chose not to credit those assertions. Accordingly, after neutrally weighing the conflicting evidence regarding the intent of defendant in making the withdrawals and whether they benefitted the victim, and giving deference to the credibility determinations of the jury, we cannot say that the verdict convicting him of grand larceny in the second degree was against the weight of the evidence (see People v Brown, 107 AD3d 1145, 1147 [2013], lv denied 22 NY3d 1039 [2013]; People v Farnsworth, 103 AD3d 982, 983-984 [2013]).

Lastly, there is dispute as to whether it must be shown that an individual must assume a victim's identity, as opposed to simply using his or her personal identifying information, in order to support a conviction for identity theft in the first degree (see People v Barden, 117 AD3d 216, 227 [2014], lv granted 24 NY3d 959 [2014]; but see People v Yuson, 133 AD3d 1221, 1221-1222 [2015]), but we need not resolve the question here. The jury was free to, and did, credit the proof that defendant, without the knowledge or permission of the victim, used her ATM card and personal identification number to obtain over $2,000 from an ATM (see Penal Law §§ 190.77, 190.80 [1]). Those actions "impl[y] that the person presenting or using the card is the cardholder, even if the person does not affirmatively present himself or herself as such," and defendant's conviction for identity theft in the first degree is therefore not against the weight of the evidence (People v Barden, 117 AD3d at 227-228; see People v Vandermuelen, 42 AD3d 667, 670 [2007], lv denied 9 NY3d 965 [2007]).

McCarthy, J.P., Garry and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court